## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**VELMA JOYCE CHRISTENSEN and**
**JAMES CALVIN CUMMINGS,**

     **Plaintiffs,**

**v.**

**BNSF RAILWAY COMPANY and**
**SEMA CONSTRUCTION, INC.,**

     **Defendants.**

**Case No. 16-cv-02718-DDC-TJJ**

## MEMORANDUM AND ORDER

Plaintiffs filed this action in the District Court of Miami County, Kansas, on September 6, 2016.  Doc. 1-1 at 6.  Defendant BNSF Railway Company ("BNSF") removed it to our court on October 19, 2016.  Doc. 1.  This matter comes before the court today on three motions: plaintiffs' Motion to Remand (Doc. 19); defendant SEMA Construction, Inc.'s Motion to Dismiss (Doc. 13); and defendant BNSF's Motion to Dismiss (Doc. 15).

### Background

Plaintiff Velma Christensen owns real property in Miami County, Kansas, which she leases to plaintiff James Cummings.  In 1867, the then-owner of Ms. Christensen's property granted an easement to a railroad company that would eventually become defendant BNSF.  The railroad easement cut Ms. Christensen's property in half diagonally.  When built, the railroad ended up being 20 feet above Ms. Christensen's land, and featured two large, rectangular tunnels (called box culverts) under the railroad so that livestock and farm equipment could pass from one side of Ms. Christensen's property to the other.  The tunnels were used in this manner until recently.

In July 2015, Ms. Christensen signed an agreement granting BNSF and defendant SEMA Construction, Inc. ("SEMA") a temporary access easement so that SEMA could repair the BNSF railroad.  During those repairs, BNSF and SEMA replaced the tunnels with six round pipes that are too small to accommodate livestock and farm equipment.  Because of this change, plaintiffs no longer have access to both halves of the property.  So, on October 27, 2015, Ms. Christensen informed BNSF that she was terminating the temporary access easement.  Nonetheless, BNSF and SEMA continued to cross Ms. Christensen's property to repair the railroad.  After an attempt to resolve the dispute out of court, plaintiffs filed this lawsuit.

Plaintiffs assert several claims, including claims for trespass, fraud, and breach of contract.[1]  Plaintiffs also ask the court to issue an injunction requiring defendants to "reinstall an access way under the railroad sufficient to permit the movement of livestock and agricultural equipment back and forth between the west and east tracts of [Ms.] Christensen's property." Doc. 36-1 at 7.

After removing the case, defendants filed separate Motions to Dismiss plaintiffs' Complaint.  And plaintiffs timely filed their Motion to Remand.  BNSF's removal was improper, so the court grants plaintiffs' Motion to Remand.  Because the court lacks subject matter jurisdiction, it does not decide defendants' Motions to Dismiss.  Should defendants wish to still pursue their Motions to Dismiss, they must take the steps required to do so under Kansas state law once the case is remanded.

---

[1] Plaintiffs filed their First Amended Complaint (Doc. 36-1) after their Motion to Remand, but nothing in their First Amended Complaint affects the parties' remand arguments or the court's analysis.  The court thus considers all references to plaintiffs' Complaint in the parties' briefs as referencing the corresponding claims and allegations in plaintiff's First Amended Complaint.

## Analysis

### I.    Removal

Plaintiffs contend that the court must remand this case to the District Court of Miami County, Kansas, for two reasons:  (1) BNSF's Notice of Removal is procedurally defective and (2) the court lacks subject matter jurisdiction over plaintiffs' claims.  Because the court concludes that it lacks jurisdiction to hear this case, it only addresses plaintiffs' second argument.

A defendant may remove any state-court, civil action to federal court if the federal court has original jurisdiction over at least one of the plaintiff's claims.  28 U.S.C. § 1441(a); 28 U.S.C. § 1367.  But, the court must remand the case to state court if it lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  "The removing party has the burden to demonstrate the appropriateness of removal from state to federal court."  *Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005) (citation omitted).

All of plaintiffs' claims arise under state law and no diversity jurisdiction exists in the case because Ms. Christensen, BNSF, and SEMA are all Texas residents.  Nonetheless, BNSF removed the case to our court, asserting that plaintiffs' claim for an injunction is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 *et seq.* Defendants thus contend that subject matter jurisdiction exists here under 28 U.S.C. § 1331— commonly called federal question jurisdiction.  *See Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012).

Under § 1331, the court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  To determine whether a claim arises under federal law, courts employ the well-pleaded complaint rule.  *Id.*  Under this rule, "a suit arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is

based' on federal law." *Id.* (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996); further citations omitted). So, a federal defense—even one based on preemption— typically cannot satisfy the well-pleaded complaint rule, and thus cannot create federal question jurisdiction. *Id.*; *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("[A] defense that relies on . . . the pre-emptive effect of a federal statute will not provide a basis for removal." (citations omitted)).

But, there are limits on the well-pleaded complaint rule. *Devon Energy*, 693 F.3d at 1203–04. One is the complete preemption doctrine. *Id.* Under this doctrine, "a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim 'necessarily federal in character.'" *Id.* at 1204 (quoting *Schmeling*, 97 F.3d at 1339; further citations omitted). This is so because the federal statute so completely preempts the state-law cause of action that "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8. Defendants contend that this doctrine applies here because the ICCTA completely preempts plaintiffs' injunction claim.

The preemption required to invoke the complete preemption doctrine is not the same preemption that defendants usually rely on as a defense, *i.e.*, "ordinary preemption." *See Devon Energy*, 693 F.3d at 1203 n.4 (citations omitted); *Shupp v. Reading Blue Mountain*, 850 F. Supp. 2d 490, 497 (M.D. Pa. 2012). "Complete preemption is a jurisdictional concept originating in Congress's intent to wholly govern a particular area of law." *Shupp*, 850 F. Supp. 2d at 496 (citing *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999)). For complete preemption to exist, then, Congress must have manifested an intent for the federal statute to "wholly displace[]" the state-law cause of action. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08

(2004) (quoting *Anderson*, 539 U.S. at 8).  So, complete preemption occurs only where "a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal."  *Devon Energy*, 693 F.3d at 1205 (quoting *Schmeling*, 97 F.3d at 1342; further citations omitted).

Because complete preemption represents such an "extraordinary pre-emptive power," it rarely applies.  *Id.* at 1204 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  Indeed, "the Supreme Court has warned that complete preemption should not be 'lightly implied,'" and has recognized it in only three instances:  "§ 301 of the Labor Management Relations Act of 1947 ("LMRA"), § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and actions for usury against national banks under the National Bank Act."  *Id.* at 1204–05 (citations omitted).  Here, defendants ask the court to expand this list to include the ICCTA.

To determine whether the ICCTA completely preempts plaintiffs' easement injunction claim, then, the court must answer two questions affirmatively:  (1) does "the federal regulation at issue preempt[] the state law relied on by the plaintiff"; and (2) did Congress intend to allow removal in this case.  *Id.* (citing *Schmeling*, 97 F.3d at 1342).  Our Circuit has instructed courts to start with the second question—congressional intent.  *Id.* at 1206.

The congressional intent inquiry in a complete preemption case is somewhat different than the one courts employ in ordinary preemption cases.  *See Dutcher v. Matheson*, 733 F.3d 980, 986 (10th Cir. 2013) ("[C]omplete preemption is not the same as preemption." (citation omitted)).  Instead of asking whether Congress intended to provide defendants with a federal defense to a state-law claim, the court must ask whether Congress intended "the federal statutes at issue [to] provide[] the exclusive cause of action for the claim asserted and also set forth

procedures and remedies governing that cause of action." *Anderson*, 539 U.S. at 8; *see also id.* at

9 n.5 ("[T]he proper inquiry focuses on whether Congress intended the federal cause of action to

be exclusive."). So, "[t]he existence of a potential federal cause of action is critical." *Dutcher*,

733 F.3d at 986 (citation omitted). And, a run of the mill express preemption provision—like the

one found in § 10501 of the ICCTA—is not sufficient to create complete preemption. *See*

*Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1190 (8th Cir. 2015) ("The

ICCTA's express preemption provision . . . does not address removal or explicitly provide for

federal-question jurisdiction over all preempted state-law claims." (citing *Conn. State Dental*

*Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1334 (11th Cir. 2009))); *Tres Lotes LLC v.*

*BNSF Ry. Co.*, 61 F. Supp. 3d 1213, 1216 (D.N.M. 2014) ("Despite this express preemption in

the statute, however, the question remains whether Congress intended for the ICCTA to exert

complete preemption in the context presented in the instant case." (citing *Elam v. Kan. City S.*

*Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011))). "[A] state cause of action may not be viable

because it is preempted by a federal law—but only if federal law provides its own cause of

action does the case raise a federal question that can be heard in federal court." *Dutcher*, 733

F.3d at 986.

Here, defendants identify no ICCTA provision or regulation that gives plaintiffs a federal

cause of action sufficiently similar to their state-law claims to justify applying the complete

preemption doctrine. Indeed, defendants never even address whether the ICCTA provides any

federal cause of action. Instead, they simply argue that "[p]laintiffs' argument that the ICCTA

does not provide a remedy for them . . . is . . . without merit." Doc. 23 at 7. Although the court

agrees that complete preemption does not require the ICCTA to provide plaintiffs with the exact

relief they seek under their state-law claims, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391 n.4

(1987), it does require the ICCTA to provide plaintiffs with a cause of action that would

"vindicate the same basic right or interest that would otherwise be vindicated under state law,"

*Devon Energy*, 693 F.3d at 1207 (citations omitted).  Defendants' arguments thus may apply if

they invoke ordinary preemption as a defense, but they do not provide the requisite foundation

for subject matter jurisdiction under the complete preemption doctrine.  *E.g.*, *Anderson*, 539 U.S.

at 9 ("The section would therefore provide the petitioners with a complete federal defense.  Such

a federal defense, however, would not justify removal."  (citing *Caterpillar*, 482 U.S. at 393)).

Although defendants do not note it, the ICCTA does provide plaintiffs with an

administrative cause of action.  But this administrative cause of action is available only for

violations of the ICCTA's substantive provisions or accompanying regulations.  *Griffioen*, 785

F.3d at 1191 (citing 49 U.S.C. § 11704(b)).  Those provisions and regulations focus primarily on

rates, licensing, finance, and regulation of competition.  *See* 49 U.S.C. § 10101 (stating the

ICCTA's policy goals); *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1130 (10th Cir. 2007)

(explaining that the ICCTA focuses on permitting, competition, and rates, among other things);

*see also Tres Lotes*, 61 F. Supp. 3d at 1216–17 ("A careful reading of the [ICCTA] reveals that

its preemptive effect is confined to the regulation of rail transportation . . . .'"  (citations

omitted)).  Here, plaintiffs seek an injunction requiring defendants to replace the six small

culverts they installed with the large box culverts that once had been in place, thereby restoring

plaintiffs' access way under the railroad.  Plaintiffs base this claim on Kansas easement law.  The

ICCTA and its regulations contain provisions about railroad construction, but none of those

provisions appear to dictate how railroads must be constructed.  *See, e.g.*, 49 C.F.R. §§ 1150.1–

.10 (containing regulations for seeking a construction permit); 49 U.S.C. §§ 10901–07 (the

ICCTA's construction provisions).  So, the ICCTA's construction-based provisions cannot

provide plaintiffs with a federal cause of action under the statute's administrative cause of action provision.  *Cf. Griffioen*, 785 F.3d at 1191 (holding that the ICCTA's administrative cause of action did not provide the plaintiff with a federal cause of action because the plaintiff's claims did "not fall within the scope of [the ICCTA's] substantive framework").

The absence of a federal cause of action under the ICCTA that would encompass plaintiffs' claims leads the court to conclude that Congress has not manifested an intent for the ICCTA to provide plaintiffs' exclusive cause of action or serve as the basis for removal here. And, the ICCTA's statutory and regulatory scheme is not so expansive as to convince the court that Congress intended for it to provide the exclusive cause of action for plaintiffs' claim.  *Cf. Davila*, 542 U.S. at 208–09 (discussing how ERISA's comprehensive legislative and enforcement scheme evinced Congress's intent for it to provide the exclusive federal cause of action for the plaintiff's claims).  So the complete preemption doctrine does not apply to this case, and the court thus lacks jurisdiction to hear plaintiffs' claims.

Decisions by other federal courts in cases similar to this one also support this conclusion. In *Tres Lotes LLC v. BNSF Railway Co.*, the District of New Mexico held that the ICCTA did not completely preempt the plaintiff's claim for injunctive relief recognizing an easement across BNSF property.  61 F. Supp. 3d at 1217–18.  To reach this conclusion, the court noted that, even in cases about ordinary preemption, the ICCTA's adjudicative body—the Surface Transportation Board—holds that "easement cases are generally not preempted at all," which makes it "dubious at best to contend that they are so manifestly federal in nature as to qualify for complete preemption."  *Id.* at 1218.  The Middle District of Pennsylvania reached a similar conclusion in *Shupp v. Reading Blue Mountain*, where it held that the ICCTA did not completely preempt the plaintiffs' claim seeking an injunction that would require the defendants to reconstruct a crossing

that had represented the plaintiffs' only means to access both sides of their property.  850 F. Supp. 2d at 494.  *Shupp* and *Tres Lotes* are just two examples among many that support the court's conclusion here today.  *E.g.*, *Can. Nat'l Ry. Co. v. Montreal, Me. & Atl. Ry., Inc.*, 750 F. Supp. 2d 189, 195 (D. Me. 2010) (explaining that the ICCTA completely preempted the plaintiff's claims only because its claims were not based on the easement itself but on a tracking rights agreement incorporated into the easement, stating, "the dispute is not about where the easement lies, the duration of the easement, the retained rights of the grantor, or other issues that would be resolved by application of state law").

Like the plaintiffs' claims in *Shupp* and *Tres Lotes*, the ICCTA does not completely preempt plaintiffs' claim for an injunction.  The court thus grants plaintiffs' Motion to Remand. But in granting plaintiffs' Motion, the court does not decide whether defendants may raise a preemption defense in state court.  This question is one for the state court to decide, so defendants' pending Motions to Dismiss remain pending and the court entrusts them to the state court to decide.

## II.    Attorney Fees

Plaintiffs seek an award of fees and expenses under 28 U.S.C. § 1447(c), which allows the court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" when remanding a case to state court.  The decision to award fees and expenses "is within the [c]ourt's discretion."  *Russell v. Sprint Corp.*, 264 F. Supp. 2d 955, 963 (D. Kan. 2003) (citations omitted), *abrogated on other grounds by Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005).  But, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should

be denied." *Kansas ex rel. Morrison v. Price*, 242 F. App'x 590, 593 (10th Cir. 2007) (quoting *Martin*, 546 U.S. at 141). In other words, the court may award fees and costs under § 1447(c) when the removing defendants had no "objectively reasonable grounds to believe the removal was legally proper." *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1148 (10th Cir. 2004), *aff'd*, 546 U.S. 132 (2005).

This case presents one of those instances where a party's actions tempt the fine line that separates the objectively reasonable from the unreasonable. The Supreme Court has emphasized time and again that complete preemption is rare. This acknowledgement of the doctrine's rarity should have sufficed to give a sophisticated litigant like BNSF serious pause about removing the case to a federal court. Whether it did so is something the court cannot know. But the court does know that defendants invoked this admittedly rare doctrine without providing any citation to support their position. And though the complete preemption doctrine is somewhat complicated in origin, its principles are relatively well-settled and clearly expressed by our Circuit. So defendants' failure to address these principles concerns the court. Based on these considerations, BNSF's removal—which SEMA joined—appears to be unreasonable.

But there is a dearth of circuit precedent discussing the ICCTA and complete preemption. Indeed, few district court cases even discuss the issue. This lack of authority nudges defendants' removal back into objectively reasonable territory—but just barely. So, although the court agrees with plaintiffs that BNSF should never have removed the case, the court is not quite prepared to call defendants' actions objectively unreasonable. The court thus declines to grant plaintiffs' request for fees and costs.

**IT IS THEREFORE ORDERED THAT** plaintiffs' Motion to Remand (Doc. 19) is granted in part and denied in part. The court denies plaintiffs' request for fees and costs under

28 U.S.C. § 1447(c).  But the court grants plaintiffs' motion to remand and remands the case to the District Court of Miami County, Kansas.

**IT IS SO ORDERED.**

**Dated this 16th day of March, 2017, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**